UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,<br>U.S. Attorney's Office<br>601 D Street, NW<br>Washington, DC 20560, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | |
| $601,426.19 OF FUNDS ASSOCIATED<br>WITH DYNAPEX ENERGY LIMITED, | ) ) ) | |
| $4,866,527.84 OF FUNDS ASSOCIATED<br>WITH DYNAPEX ENERGY LIMITED, | ) ) ) | |
| $160,810.94 ASSOCIATED WITH BINRIN<br>LIMITED, | ) ) ) | |
| $1,078,587.67 ASSOCIATED WITH<br>SIBSHUR LIMITED, | ) ) ) | Civ A. No. 24-cv-542 _____ |
| $999,980.00 ASSOCIATED WITH SIBSHUR<br>LIMITED, | ) ) ) | |
| $2,599,979.00 ASSOCIATED WITH DINRIN<br>LIMITED, | ) ) ) | |
| $1,579,274.58 OF FUNDS ASSOCIATED<br>WITH PETROCHEM SOUTH EAST<br>LIMITED, | ) ) ) ) | |
| $110,232.63 OF FUNDS ASSOCIATED<br>WITH XINGHAI INTERNATIONAL SHIP<br>MANAGEMENT LIMITED ("XINGHAI"), | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

The United States of America (the "United States"), by and through undersigned counsel, brings this verified complaint for forfeiture in a civil action *in rem* against the defendant property, namely: (1) $601,426.19 of funds associated with Dynapex Energy Limited ("Defendant Funds 1"); (2) $4,866,527.84 of funds associated with Dynapex Energy Limited ("Defendant Funds 2"); (3) $160,810.94 of funds associated with Binrin Limited ("Defendant Funds 3"); (4) $1,078,587.67 of funds associated with Sibshur Limited ("Defendant Funds 4"); (5) $999,980.00 of funds associated with Sibshur Limited ("Defendant Funds 5"); (6) $2,599,979.00 of funds associated with Dinrin Limited ("Defendant Funds 6"); (7) $1,579,274.58 of funds associated with Petrochem South East Limited ("Defendant Funds 7"); and, (8) $110,232.63 of funds associated with Xinghai International Ship Management Limited ("Defendant Funds 8") (collectively, "Defendant Funds"), and alleges as follows:

## NATURE OF ACTION AND THE DEFENDANT IN REM

1. This *in rem* forfeiture action arises from an investigation by Homeland Security Investigations ("HSI") and the Federal Bureau of Investigation ("FBI") into the unlawful use of the U.S. financial system to support and finance Iran's sale and shipment of petroleum products for the benefit of sanctioned Iranian entities. On January 23, 2020, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") sanctioned Triliance Petrochemical Co. Ltd. ("Triliance") for transferring funds on behalf of the National Iranian Oil Company ("NIOC") in connection with the sale of Iranian petroleum products. On October 26, 2020, OFAC designated NIOC and the Iranian Ministry of Petroleum pursuant to a counterterrorism authority for their financial support for the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"), a designated Foreign Terrorist Organization. Following its designation, Triliance used a network of

front companies, including Petrochem South East Limited ("Petrochem"), Dynapex Energy Limited ("Dynapex"), Binrin Limited ("Binrin"), Sibshur Limited ("Sibshur"), and Dinrin Limited ("Dinrin"), to facilitate the continued sale of Iranian petroleum products in violation of U.S. sanctions.  This action seeks the forfeiture of payments executed by those front companies in furtherance of the scheme.

2.      The Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i) as assets affording any person a source of influence over an entity or organization engaged in planning or perpetrating any federal crime of terrorism.  The Defendant Funds are additionally subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as property involved in transactions or attempted transactions in violation of 18 U.S.C. § 1956 or property traceable to such property, and under 18 U.S.C. § 981(a)(1)(C) as proceeds of violations of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4.      This Court has *in rem* jurisdiction over the Defendant Funds and venue pursuant to 28 U.S.C. §§ 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the District of Columbia.  Specifically, the Defendant Entities and co-conspirators failed to seek or obtain licenses from the Department of the Treasury's ("Treasury's") Office of Foreign Asset Control ("OFAC"), which is located in Washington, D.C., to conduct transactions through the United States for which licenses were required under United States law.

## FACTS GIVING RISE TO FORFEITURE

**A.      RELEVANT INDIVIDUALS AND ENTITIES**

Government of Iran

5.      On January 19, 1984, the United States designated Iran as a state sponsor of terrorism.  *See* https://www.state.gov/reports/country-reports-on-terrorism-2020/iran/.  For 2020, the most recent year for which Country Reports on Terrorism are available, the State Department concluded that "Iran continued its terrorist-related activity in 2020, including support for Hizballah, Palestinian terrorist groups in Gaza, and various terrorist and militant groups in Iraq, Syria, and elsewhere throughout the Middle East."  *Id.*  The State Department further found that "Iran used the Islamic Revolutionary Guard Corps – Qods Force (IRGC-QF) to provide support to terrorist organizations, provide cover for associated covert operations, and create instability in the region," and that "the IRGC-QF is Iran's primary mechanism for cultivating and supporting terrorist activity abroad."  *Id.*  To date, the United States has not delisted Iran as a state sponsor of terrorism.  *See* https://www.state.gov/state-sponsors-of-terrorism/.

Iranian Ministry of Petroleum

6.      According to the Iranian Ministry of Petroleum's website, the ministry "is a state-run organ affiliated with the Executive branch of government" that was established in 1979. https://en.mop.ir/en-US/en.mop/5746/page/Ministry-Of-Petroleum.  The ministry reports that it "is tasked with exercising the principle of Iran's ownership of and national sovereignty over oil and gas resources as well as separating governance from administrative tasks in the development of oil and gas industry."  *Id.*  The ministry exercises its authority over the petroleum industry through four subsidiaries – NIOC, the National Iranian Gas Company, the National Iranian Oil Refining and Distribution Company, and the National Petrochemical Company.  *Id.* ("The structural organization of the Ministry comprises a head office and four main subsidiaries – National Iranian Oil Company (NIOC), National Iranian Gas Company (NIGC), National Iranian Oil Refining and Distribution Company (NIORDC) and National Petrochemical Company (NPC).

Through subsidiaries, the Ministry supervises exploration, extraction, marketing and selling of crude oil, natural gas and petroleum products in the country.").

7.      The Iranian government's ownership of petroleum resources stems from Articles 44 and 45 of Iran's constitution.  Article 44 provides in part: "The economy of the Islamic Republic of Iran is to consist of three sectors: state, cooperative, and private, and is to be based on systematic and sound planning.  The state sector is to include all large-scale and mother industries, foreign trade, major minerals, banking, insurance, power generation, dams and large-scale irrigation networks, radio and television, post, telegraph and telephone services, aviation, shipping, roads, railroads and the like; all these will be publicly owned and administered by the State." https://www.constituteproject.org/constitution/Iran_1989.pdf?lang=en.[1]   Article 45 provides in part: "Public wealth and property, such as uncultivated or abandoned land, mineral deposits, seas, lakes, rivers and other public water-ways, mountains, valleys, forests, marshland, natural forests, unenclosed pastureland, legacies without heirs, property of undetermined ownership, and public property recovered from usurpers, shall be at the disposal of the Islamic government for it to utilize in accordance with the public interest."  *Id.*  Although Iran purportedly liberalized its interpretation of Article 44 beginning in or around 2004, allowing some private investment in certain industries, the Iranian Ministry of Oil continues to report that it "is tasked with exercising the principle of Iran's ownership of and national sovereignty over oil and gas resources," as noted above. https://en.mop.ir/home/.

8.      Article 2 of Iran's Oil Law (Sep. 30, 1987) provides: "The country's oil resources are part of the Anfal and public wealth, and according to Article 45 of the Constitution, is at the

---

[1] The Constitution of the Islamic Republic of Iran was adopted and went into force in 1979.  It has been amended once, on July 28, 1989.

disposal of the Islamic government, and all facilities, equipment, assets and investments that have been or will be made by the Ministry of Oil and subsidiaries at home and abroad will belong to the Iranian people and to the Islamic government.  The exercise of sovereignty and ownership of oil resources and facilities belongs to the Islamic Government, which according to the provisions and powers enumerated in this law, it is the responsibility of the Ministry of Oil to act in accordance with the general principles and plans of the country."   https://en.mop.ir/en-US/en.mop/5761/news/view/16393/2000006424 (cleaned up for consistency amongst translations).

9.     On October 26, 2020, the Department of the Treasury's Office of Foreign Assets Control ("OFAC") designated the Iranian Ministry of Petroleum under Executive Order 13,224 for providing financial support to the Islamic Revolutionary Guard Corps – Quds Force ("IRGC-QF").   *See* https://home.treasury.gov/news/press-releases/sm1165.   OFAC found that "[t]he Iranian Ministry of Petroleum has been used by individuals at the highest levels of the Iranian regime to facilitate the IRGC-QF's revenue generation scheme."   *Id.*

Islamic Revolutionary Guard Corps

10.     The IRGC is a branch of the Iranian armed forces whose purpose is to defend the country's political system.   The IRGC-QF is a branch of the IRGC that specializes in unconventional warfare and military intelligence operations.

11.     The Department of the Treasury has found "[t]he IRGC is Iran's most powerful economic actor, dominating many sectors of the economy, including energy, construction, and banking."   https://home.treasury.gov/news/press-releases/tg1718.   According to OFAC, "[t]he IRGC and its major holdings, such as the Basij Cooperative Foundation and Khatam al-Anbiya, have a dominant presence in Iran's commercial and financial sectors, controlling multi-billion

dollar businesses and maintaining extensive economic interests in the defense, construction, aviation, oil, banking, metal, automobile and mining industries, controlling multi-billion dollar businesses." https://home.treasury.gov/news/press-releases/sm703.

12.     The IRGC and IRGC-QF use a network of shipping companies and front companies to hide their involvement in the sale and shipment of Iranian oil.  Specifically, OFAC has found that the IRGC-QF uses a "complex network of intermediaries … to obfuscate its involvement in selling Iranian oil." https://home.treasury.gov/news/press-releases/sm767; *see also* https://home.treasury.gov/news/press-releases/tg1718 ("The IRGC, long a target of U.S. sanctions, has a history of attempting to circumvent sanctions by maintaining a complex network of front companies.").  The Secretary of the Treasury has previously found that holding groups and companies in the petrochemical sector and elsewhere "provide financial lifelines to the IRGC." https://home.treasury.gov/news/press-releases/sm703.

13.     The IRGC generates substantial revenues from the sale of petroleum products.  For example, OFAC has reported that "[i]n spring 2019 alone, this IRGC-QF-led network employed more than a dozen vessels to transport nearly 10 million barrels of crude oil, predominantly to the Syrian regime.  These shipments, taken collectively, sold for more than half a billion dollars.  The same network also sold nearly four million barrels of condensate and hundreds of thousands of barrels [of] gas oil, bringing in another quarter billion dollars." https://home.treasury.gov/news/press-releases/sm767.

14.     The IRGC uses the proceeds from the distribution of petroleum to fund its terror activities.  OFAC has found that: "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." https://home.treasury.gov/news/press-releases/sm885; *see also*

https://home.treasury.gov/news/press-releases/sm703 ("The profits from [the IRGC's economic] activities support the IRGC's full range of nefarious activities, including the proliferation of weapons of mass destruction (WMD) and their means of delivery, support for terrorism, and a variety of human rights abuses, at home and abroad."). The Secretary of the Treasury has stated: "Iran's petrochemical and petroleum sectors are primary sources of funding for the Iranian regime's global terrorist activities and enable its persistent use of violence against its own people." https://home.treasury.gov/news/press-releases/sm885.

15. On October 25, 2007, OFAC designated the IRGC-QF under Executive Order 13,224, which is "aimed at freezing the assets of terrorists and their supporters." *See* https://2001-2009.state.gov/r/pa/prs/ps/2007/oct/94193.htm. In part, OFAC found that "[t]he Qods Force, a branch of the Islamic Revolutionary Guard Corps (IRGC), provides material support to the Taliban, Lebanese Hizballah, Hamas, Palestinian Islamic Jihad, and the Popular Front for the Liberation of Palestine-General Command (PFLP-GC)." *Id.* On October 13, 2017, OFAC designated the IRGC pursuant to Executive Order 13,224 for providing material support, including training, personnel, and military equipment, to the IRGC-QF. *See* https://home.treasury.gov/news/press-releases/sm0177.On April 8, 2019, the President announced that he would designate the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1189). *See* https://ir.usembassy.gov/statement-from-the-president-on-the-designation-of-the-islamic-revolutionary-guard-corps-as-a-foreign-terrorist-organization/. The announcement noted, in part, that "the IRGC actively participates in, finances, and promotes terrorism as a tool of statecraft," and warned that "[i]f you are doing business with the IRGC, you will be bankrolling terrorism." *Id.* On April 8, 2019, the State Department similarly announced the pending designation of the

IRGC, including the IRGC-QF.   *See* https://2017-2021.state.gov/designation-of-the-islamic-revolutionary-guard-corps/index.html.   That announcement noted that "[T]he IRGC—most prominently through its Qods Force—has the greatest role among Iran's actors in directing and carrying out a global terrorist campaign."   *Id.*   On April 15, 2019, the Secretary of State published a notice in the Federal Register that he had designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization under Section 219 of the INA.   *See* 84 Fed. Reg. 15,278 (Apr. 15, 2019),   https://www.federalregister.gov/documents/2019/04/15/2019-07415/in-the-matter-of-the-designation-of-the-islamic-revolutionary-guard-corps-and-other-aliases-as-a.

<u>National Iranian Oil Company</u>

16.    NIOC is the national oil company of Iran and a subsidiary of the Iranian Ministry of Oil.   NIOC describes itself as "one of the largest oil firms in the world with huge hydrocarbon reserves."    https://en.mop.ir/en-US/en.mop/5752/page/National-Iranian-Oil-Company.    NIOC reports that it is "responsible for organizing and policy-making activities of the oil industry, including exploration, drilling, production, research and development, as well as oil and gas exports."   *Id.*; *see also* https://home.treasury.gov/news/press-releases/sm1165 ("NIOC, overseen by the Ministry of Petroleum, is responsible for the exploration, production, refining, and export of oil and petroleum products in Iran.").   According to OFAC, the distribution of NIOC oil "helps to finance Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) and its terrorist proxies."   https://home.treasury.gov/news/press-releases/sm885.

17.    On September 24, 2012, the Department of the Treasury reported to Congress that it had determined that NIOC was an agent or affiliate of the IRGC.   *See* https://home.treasury.gov/news/press-releases/tg1718.   On October 26, 2020, OFAC designated NIOC pursuant to Executive Order 13,224 "for having materially assisted, sponsored, or provided

financial, material, or technological support for, or goods or services in support of, the IRGC-QF."
*See* https://home.treasury.gov/news/press-releases/sm1165.

<u>Triliance Petrochemical Co. Ltd.</u>

18.     Triliance Petrochemical Co. Ltd. ("Triliance") is a Hong Kong-based broker with branches in Iran, United Arab Emirates, China, and Germany. *See* https://home.treasury.gov/news/press-releases/sm885.   OFAC has found that Triliance is "instrumental in brokering the sale of Iranian petrochemicals abroad." https://home.treasury.gov/news/press-releases/jy0819.

19.     On January 23, 2020, OFAC designated Triliance pursuant to Executive Order 13,846 for "having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, NIOC, a person included on the List of Specially Designated Nationals and Blocked Persons whose property and interests in property are blocked pursuant to E.O. 13599." *See* https://home.treasury.gov/news/press-releases/sm885.   In that designation, OFAC found that Triliance was one of "four international petrochemical and petroleum companies that have collectively transferred the equivalent of hundreds of millions of dollars' worth of exports from the National Iranian Oil Company (NIOC), an entity instrumental in Iran's petroleum and petrochemical industries, which helps to finance Iran's Islamic Revolutionary Guard Corps-Qods Force (IRGC-QF) and its terrorist proxies." *See id*.   OFAC further found in that designation that "Iran's petroleum and petrochemical industries are major sources of revenue for the Iranian regime and funds its malign activities throughout the Middle East." *Id.*

20.     Since its designation, "Triliance has used various front companies to purchase, or facilitate the purchase and movement of, petrochemical products from Iran, and [those front

companies] help facilitate Iran's petrochemical and petroleum exports in contravention of U.S. economic sanctions." https://home.treasury.gov/news/press-releases/sm1114. As discussed above, the IRGC uses such front companies to hide its involvement in the sale of Iranian oil, *see* https://home.treasury.gov/news/press-releases/sm767, and these front companies provide a financial lifeline to the IRGC, *see* https://home.treasury.gov/news/press-releases/sm703.

Petrochem South East Limited

21.     Petrochem South East Limited ("Petrochem") was incorporated in Hong Kong as a private company on or around July 8, 2016. According to OFAC, Triliance used Petrochem to channel payments to companies involved in petrochemical deals with Triliance. *See* https://home.treasury.gov/news/press-releases/sm1214. On December 16, 2020, OFAC designated Petrochem pursuant to Executive Order 13,846 for facilitating the export of Iranian petrochemical products. *Id.*

Dynapex Energy Limited

22.     Dynapex Energy Limited ("Dynapex") was incorporated as a private company in Hong Kong on or around March 26, 2014. Publicly-available information indicates that Dynapex owned three oil tankers, the Gas Gemini (IMO No. 8818219), the Kraken Rider (IMO No. 9241073), and the Valentina (IMO No. 9341512), at the time of the relevant events.

23.     According to OFAC, Triliance used Dynapex and another company "to facilitate the shipment and resale of tens of thousands of metric tons of petrochemical products worth millions of dollars to an Asian country." https://home.treasury.gov/news/press-releases/sm1114. On September 3, 2020, OFAC designated Dynapex pursuant to Executive Order 13,846, "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Triliance." *Id.*

Binrin Limited

24.     Binrin Limited ("Binrin") is a private company that was incorporated in Hong Kong on or around July 24, 2018.  According to OFAC, Binrin has assisted an Iranian petrochemical company, Arya Sasol Polymer Company ("Arya Sasol"), in collecting the proceeds of its foreign petrochemical sales since 2019.  *See* https://home.treasury.gov/news/press-releases/sm1168.  On October 29, 2020, OFAC designated Binrin pursuant to Executive Order 13,846 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Arya Sasol."  *Id.*

Sibshur Limited

25.     Sibshur Limited ("Sibshur") was incorporated in Hong Kong as a private company on or around May 8, 2019.  According to OFAC, Triliance has used Sibshur, among other companies, "to help settle, process, and transfer millions of dollars in proceeds from petrochemical product sales."  *See* https://home.treasury.gov/news/press-releases/sm1168.  On October 29, 2020, OFAC designated Sibshur pursuant to Executive Order 13,846 "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Triliance."  *Id.*

Dinrin Limited

26.     Dinrin Limited ("Dinrin") was incorporated as a private company in Hong Kong on or around July 5, 2019.  According to OFAC, Dinrin helped an Iranian company, Zagros Petrochemical Company ("Zagros"), hide its involvement in petrochemical sales to Triliance.  *See* https://home.treasury.gov/news/press-releases/sm1114.  Specifically, "Dinrin helped process millions of dollars in proceeds of Zagros' sale of petroleum products to companies in Asia, including being the beneficiary of a multi-million dollar payment made for a shipment of a

petroleum product that Zagros sold to [Petrotech FZE, a UAE-based entity]." *Id.* On September 3, 2020, OFAC designated Dinrin pursuant to Executive Order 13,846 for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Zagros. *Id.*

Donghai International Ship Management Limited

27.    Donghai International Ship Management Limited ("Donghai") was incorporated in Hong Kong as a private company on or around July 12, 2012. According to OFAC, "[i]n early 2020, China-based Donghai International Ship Management Limited (Donghai) was responsible for operating a vessel that freighted tens of thousands of metric tons of petrochemicals worth millions of dollars from Iran to China for a deal brokered by Triliance." https://home.treasury.gov/news/press-releases/sm1214. Triliance then used Petrochem "to make payment to Donghai in return for Donghai's management of a vessel used to transport petrochemicals in a deal brokered by Triliance." *Id.* On December 16, 2020, OFAC designated Donghai pursuant to Executive Order 13,846, "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services to or in support of, Triliance." *Id.*

28.    Petrochem has also previously received payments on behalf of Donghai. For example, on September 14, 2018, a company in Malaysia sent Petrochem a wire for $567.50 through U.S. Correspondent Bank 1. The payment reference for this wire transfer stated: "CREDIT REFUND/DONGHAI INTERNATIONAL IMO: 9492945, 9471604, 9499096." The numbers 9492945, 9471604, and 9499096 are, respectively, the International Maritime Organization ("IMO") numbers assigned to the Infinity, the Wanxing, and the Hai Xin You, three petroleum product tankers that have travelled to Iran.

29.     Additionally, on November 17, 2017, a company in Singapore sent Petrochem a wire transfer for $522,689.62 through U.S. Correspondent Bank 2.  The payment reference for this wire transfer states: "VESSEL MT SC BEIHAI VOY 1713 OOS    IMO   9471604."     The SC Beihai is an oil tanker that is owned and operated by Donghai.

Xinghai International Ship Management Limited

30.     Xinghai International Ship Management Limited ("Xinghai") is a ship management company that was incorporated in Hong Kong on December 4, 2012 and is based in Guangzhou, China.

31.     Financial records show that Xinghai listed "Donghai" on its wire transfers through U.S. correspondent banks at least seven times between September 2015 and October 2018.  These wires indicated that they were payments for invoices, management fees, and port charges, all highlighting the ongoing relationship between these companies.[2]

32.     As described above, Xinghai has operated as a front company for Donghai.

**B.     RELEVANT EVENTS**

Dynapex transferred Defendant Funds 1 and 2 through a U.S. correspondent bank.

33.     On or around August 27, 2020, Singapore Company 1 sent Defendant Funds 1, an international wire transfer for $601,431.10, to Dynapex through U.S. Correspondent Bank 2.

---

[2]     In one instance, an online directory of Chinese shipping companies refers to Xinghai as Donghai.   *See*    http://www.shippingonline.cn/Yellowpages/temp1/index.asp?solid=fkhjbli ("Rooted in the fertile of the world's shipping industry thrive in globalization, the DONGHAI will advance with the times and progressive, ambitious loyalty, enthusiasm, fair responsible for the concept of service to every customer, positive participate in activities associated with the industry at home and abroad, and continuously improve the level of ship management in order to obtain greater customer trust and create first-class ship management services to chemical brand, brilliant cast industry.").

34.     On or around August 27, 2020, Singapore Company 1 sent Defendant Funds 2, an international wire transfer for $4,866,527.84, to Dynapex through U.S. Correspondent Bank 2.

35.     Although OFAC did not designate Dynapex until September 3, 2020, Triliance was using Dynapex "to facilitate the shipment and resale of tens of thousands of metric tons of petrochemical products" at the time of the transfer of Defendant Funds 1 and 2. https://home.treasury.gov/news/press-releases/sm1114.

36.     In this instance, shipping records reflect that one of Dynapex's oil tankers, the *Gas Gemini* (IMO No. 8818219), traveled within Iran's exclusive economic zone on or around July 6, 2020, July 12, 2020, July 13, 2020, August 23, 2020, August 26, 2020, and September 1, 2020.  Shipping records reflect that a second Dynapex oil tanker, the *Kraken Rider* (IMO No. 9241073), also traveled within Iran's exclusive economic zone on or around June 24, 2020, July 2, 2020, July 3, 2020, August 20, 2020, and August 29, 2020.

37.     The *Kraken Rider* had its Automatic Identification System ("AIS") transceiver turned off during its voyage within Iran's exclusive economic zone on or around August 29, 2020. AIS is a vessel tracking system that uses transceivers on ships to identify their positions, courses, and speeds, among other information.  Based on my training and experience I know that petroleum tankers loading and unloading at sanctioned ports often turn off their AIS transceivers to avoid detection by law enforcement.

38.     Consistent with Dynapex's history of providing material assistance to Triliance in the shipment and resale of petroleum products, the transfers of Defendant Funds 1 and 2 to Dynapex were in furtherance of the ongoing to scheme to use Triliance's network of front companies and shipping companies to sell and distribute illicit Iranian oil in violation of U.S. sanctions against Iran.

39.     No individual or entity sought or obtained a license from OFAC for the transfers of Defendant Funds 1 and 2 through the U.S. financial system.

<u>Binrin transferred Defendant Funds 3 through a U.S. correspondent bank.</u>

40.     On or about August 24, 2020, Binrin sent Defendant Funds 3, an international wire transfer for $160,810.94, to Canadian Procurement Partner Pte. Ltd. ("CAPPCO") via U.S. Correspondent Bank 3.

41.     CAPPCO was incorporated in Singapore on June 15, 2017.   According to CAPPCO, the company has offices in Singapore and Hong Kong and purports to be an "equipment supplier and service provider in [the] oil & gas industry in worldwide (sic)."   *See* https://www.cappco.com.hk/index.html.  CAPPCO also allegedly serves as "exclusive agent and sole representative of several well-known and world class global manufacturers."   *See* https://www.cappco.com.hk/about.html.

42.     Although OFAC did not designate Binrin until October 29, 2020, Binrin was a front company used by Iranian entities to facilitate the sale and transport of illicit Iranian oil in violation of U.S. sanctions at the time of the transfer of Defendant Funds 3.

43.     Consistent with that ongoing scheme, Binrin transferred Defendant Funds 3 in furtherance of the conspiracy to use front companies and shipping companies to sell and distribute illicit Iranian oil in violation of U.S. sanctions against Iran.

44.     No individual or entity sought or obtained a license from OFAC for the transfer of Defendant Funds 3 through the U.S. financial system.

<u>Sibshur Limited received Defendant Funds 4 and sent Defendant Funds 5 via wire transfers through U.S. correspondent banks.</u>

45.     On or about August 27, 2020, Quantum Materials Co., Ltd. sent Defendant Funds 4, which consisted of two international wire transfers totaling $1,078,587.67, to Sibshur via U.S. Correspondent Bank 3.

46.     On or about August 31, 2020, Sibshur sent Defendant Funds 5, an international wire transfer for $999,980.00, to Plus Power Co. Ltd. ("Plus Power"), a private company incorporated in Hong Kong on November 4, 2019, via U.S. Correspondent Bank 4.

47.     Business records show that Plus Power is managed by Hong Kong Xinlong Source Int'l Business Limited ("Xinlong Source"), which also manages 156 other companies.

48.     Consistent with Triliance's ongoing use of Sibshur "to help settle, process, and transfer millions of dollars in proceeds from petrochemical product sales," *see* https://home.treasury.gov/news/press-releases/sm1168, the transfers of Defendant Funds 4 and 5 were in furtherance of Triliance's use of front companies and shipping companies to sell illicit Iranian petroleum products and transfer the proceeds in violation of U.S. sanctions.

49.     No individual or entity sought or obtained a license from OFAC for the transfers of Defendant Funds 4 and 5 through the U.S. financial system.

<u>Dinrin sent Defendant Funds 6 to itself through a U.S. correspondent bank.</u>

50.     On or around October 1, 2020, Dinrin sent Defendant Funds 6, an international wire transfer of $2,599,979, to itself via U.S. Correspondent Bank 5.

51.     OFAC previously designated Dinrin on September 3, 2020 for helping an Iranian company, Zagros, hide its involvement in petrochemical sales to Triliance. *See* https://home.treasury.gov/news/press-releases/sm1114.

52.     Consistent with that ongoing scheme, Dinrin transferred Defendant Funds 6 in furtherance of the conspiracy to use Triliance's network of front companies and shipping companies to distribute illicit Iranian petroleum products in violation of U.S. sanctions against Iran.

53.     No individual or entity sought or obtained a license from OFAC in connection with the transfer of Defendant Funds 6 through the U.S. financial system.

Xinghai transferred Defendant Funds 7 to Petrochem through a U.S. correspondent bank.

54.     On March 27, 2020, Xinghai sent Defendant Funds 7, an international wire transfer for $1,579,294.58, to Petrochem through U.S. Correspondent Bank 1.

55.     Xinghai and Petrochem are both part of the network of front companies that Triliance uses to sell and transport Iranian petroleum products in violation of U.S. sanctions and for the benefit of NIOC and the IRGC, a designated Foreign Terrorist Organization.  Specifically, Xinghai operates as a front for Donghai, which in turn ships petroleum products for Triliance. Similarly, Petrochem has received payments for Donghai, and Triliance has used Petrochem to make payments to Donghai for the shipment of petroleum products.

56.     Consistent with that scheme, Xinghai executed the wire transfer of Defendant Funds 7 Petrochem in order to circumvent U.S. sanctions and facilitate the sale of illicit Iranian petroleum products.

57.     No individual or entity applied for a license from OFAC for the transfer of Defendant Funds 7.

Xinghai received Defendant Funds 8 through a U.S. correspondent bank.

58.     On or about September 4, 2020, Xinghai received Target Funds 8 from a wire transfer through a U.S. correspondent bank.

59.     As described above, Xinghai operates as a front company for Donghai.  Xinghai launders funds for Donghai and ultimately, Triliance and its Iranian affiliates.

60.     Xinghai received Defendant Funds 8 in connection with the scheme to circumvent U.S. sanctions and facilitate the sale of illicit Iranian petroleum products.

61.     No individual or entity applied for a license from OFAC for the transfer of Defendant Funds 8.

### COUNT ONE – FORFEITURE
### (18 U.S.C. § 981(A)(1)(G)(I))

62.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 61 above as if fully set forth herein.

63.     The United States has designated the IRGC, including the IRGC-QF, as a foreign terrorist organization.

64.     OFAC has designated NIOC for providing material assistance to the IRGC-QF.

65.     As described above, the Defendant Funds afford a source of influence to Dynapex, Binrin, Sibshur, Dinrin, Petrochem, Xinghai, Triliance, Donghai,, and other front companies and shipping companies which are essential in the illicit distribution of Iranian oil, over NIOC and IRGC, including IRGC-QF, within the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

66.     The Defendant Funds are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(1), as assets that afford any person a source of influence over any entity or organization engaged in planning or perpetrating any Federal crime of terrorism as defined in 18 U.S.C. § 2332b(g)(5) against the United States, U.S. citizens or residents, or their property.

### COUNT TWO – FORFEITURE
### (18 U.S.C. § 981(A)(1)(A))

67.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 61 above as if fully set forth herein.

68.     The Defendant Funds were involved in, and traceable to property involved in, a conspiracy, in violation of 18 U.S.C. § 1956(h), to violate and substantive violations of 18 U.S.C. § 1956(a)(2)(A), that is, by transporting, transmitting, and transferring, or attempting to transport, transmit, and transfer monetary instruments and funds from places outside of the United States to and through a place inside the United States, and from a place in the United States to or through a place outside the United States, with the intent to promote the carrying on of specified unlawful activities, to wit, violations of: Title 50, United States Code, section 1705 (relating to violations of the International Emergency Economic Powers Act) and Title 18, United States Code, section 1344 (relating to financial institution fraud).

69.     As such, the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or property traceable to such property.

## COUNT THREE – FORFEITURE
### (18 U.S.C. § 981(A)(1)(C))

70.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 61 above as if fully set forth herein.

71.     Dynapex, Binrin, Sibshur, Dinrin, Petrochem, Xinghai, Triliance, Donghai, and others, known and unknown, acted individually and conspired together to conduct the above identified illegal procurements and payments of the Defendant Funds in violation of IEEPA, 50 U.S.C. § 1705, and the conspiracy statute, 18 U.S.C. § 371.

72.     As such, the Defendant Funds are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to substantive violations of IEEPA and a conspiracy to violate IEEPA.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States prays that notice issue on the Defendant Funds as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the Defendant Funds be forfeited to the United States for disposition according to law; and that the United States be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: February 27, 2024
   Washington, D.C.

       Respectfully submitted,

       MATTHEW M. GRAVES
       United States Attorney

    By:  /s/ *Rajbir Datta*
       Rajbir Datta
       N.Y. Bar No. 5206073
       Assistant United States Attorney
       601 D Street, N.W.
       Washington, D.C. 20001
       Phone: (202) 252-7687
       Email: Rajbir.Datta@usdoj.gov

## <u>VERIFICATION</u>

I, Zachary J. Garrand, a Special Agent with the Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct. Executed on this 27th day of February 2024.

 */s/ Zachary J. Garrand*
Special Agent Zachary J. Garrand
Homeland Security Investigations


I, Cindy Burnham, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct. Executed on this 27th day of February 2024.

 */s/ Cindy Burnham*
Special Agent Cindy Burnham
Federal Bureau of Investigation