UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> $601,426.19 OF FUNDS ASSOCIATED WITH DYNAPEX ENERGY LIMITED, <br><br> $4,866,527.84 OF FUNDS ASSOCIATED WITH DYNAPEX ENERGY LIMITED, <br><br> $160,810.94 ASSOCIATED WITH BINRIN LIMITED, <br><br> $1,078,587.67 ASSOCIATED WITH SIBSHUR LIMITED, <br><br> $999,980.00 ASSOCIATED WITH SIBSHUR LIMITED, <br><br> $2,599,979.00 ASSOCIATED WITH DINRIN LIMITED <br><br> $1,579,274.58 OF FUNDS ASSOCIATED WITH PETROCHEM SOUTH EAST LIMITED, <br><br> $110,232.63 OF FUNDS ASSOCIATED WITH XINGHAI INTERNATIONAL SHIP MANAGEMENT LIMITED, <br><br> Defendants. | Case No. 24-cv-542 (JMC) |

**MEMORANDUM OPINION**

The United States brought this forfeiture action *in rem* against eight properties: (1) $601,426.19 of funds associated with Dynapex Energy Limited ("Defendant Funds 1"); (2) $4,866,527.84 of funds associated with Dynapex Energy Limited ("Defendant Funds 2"); (3)

1

$160,810.94 of funds associated with Binrin Limited ("Defendant Funds 3"); (4) $1,078,587.67 of funds associated with Sibshur Limited ("Defendant Funds 4"); (5) $999,980.00 of funds associated with Sibshur Limited ("Defendant Funds 5"); (6) $2,599,979.00 of funds associated with Dinrin Limited ("Defendant Funds 6"); (7) $1,579,274.58 of funds associated with Petrochem South East Limited ("Defendant Funds 7"); and (8) $110,232.63 of funds associated with Xinghai International Ship Management Limited ("Defendant Funds 8") (collectively, "Defendant Funds"). ECF 1 ¶ 1.[1]

The Government argues that the Defendant Funds are subject to seizure and forfeiture under 18 U.S.C. § 981(a)(1)(G)(i) as "foreign or domestic assets" of designated foreign terrorist organizations that have "engaged in planning and perpetrating" federal crimes of terrorism "against the United States, citizens or residents of the United States, or their property," and as "assets, foreign or domestic, affording any person a source of influence over" those foreign terrorist organizations. ECF 6-1 at 11 (quoting 18 U.S.C. § 981(a)(1)(G)(i)).[2] After receiving notice, potential claimants failed to appear or defend this action. The Clerk of Court entered default, and the Government now moves for an entry of default judgment. The Court finds that the Government has demonstrated its entitlement to such judgment and **GRANTS** the motion.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] The Government proffers additional grounds for seizure and forfeiture of the Defendant Funds, but the Court finds that the Government's claim under § 981(a)(1)(G)(i) is sufficient and so does not address the alternative grounds. *See* ECF 1 at 19–20 (Count Two, Forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A)); *id.* at 20 (Count Three, Forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C)).

I.      FACTUAL BACKGROUND[3]

This case concerns the Islamic Revolutionary Guard (IRGC) and the complicated network of state-owned entities and front companies it uses to generate revenue and fund terrorism in Iran and abroad. As alleged, the IRGC is a branch of the Iranian military with the purpose of defending Iran's political system. ECF 1 ¶ 10. According to the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC), the IRGC is "Iran's most powerful economic actor, dominating many sectors of the economy, including energy, construction, and banking." *Id.* ¶ 11. The IRGC uses the proceeds from the distribution of Iranian oil products to fund its terror activities, including the proliferation of weapons of mass destruction, a variety of human rights abuses, and support for terrorism, at home and abroad. *Id.* ¶ 14. Indeed, Iran's petrochemical and petroleum sectors are "primary sources of funding" for the Iranian regime's global terrorist activities, and the IRGC-Qods Force (IRGC-QF) is the most prominent driver of those activities. *Id.* ¶¶ 14–15. The IRGC has been subject to U.S. sanctions for many years, *id.* ¶ 12 and has been designated as a Foreign Terrorist Organization under Section 219 of the Immigration and Nationality Act since April 15, 2019. *Id.* ¶ 15. This designation extends to the IRGC-QF. *Id.*

The IRGC has a history of attempting to circumvent U.S. sanctions by maintaining a complex web of front companies to provide ostensible legitimacy to illicit Iranian oil transportation and sales. *See id.* ¶ 12. This complicated enterprise is critical to the IRGC as the revenues from these holding groups and companies in the petrochemical sector provide the IRGC with "financial lifelines." *Id*. On September 24, 2012, the Department of the Treasury reported to Congress that the National Iranian Oil Company (NIOC) was an "agent or affiliate" of the IRGC, and part of the

---

[3] This factual background relies upon the Government's allegations in its verified complaint, ECF 1. On a motion for default judgment, the Court treats all well-pleaded allegations in the complaint as admitted. *United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*, 480 F. Supp. 3d 39, 43 (D.D.C. 2020).

3

IRGC's broader financial enterprise. *Id.* ¶ 17. NIOC is a subsidiary of the Iranian Ministry of Oil. *Id.* ¶ 16. It describes itself as one of the largest oil firms in the world, and directs many of the activities of Iran's oil industry, including oil and gas exports. *Id.* OFAC has stated that NIOC's oil business "helps to finance [IRGC-QF] and its terrorist proxies." *Id.*

Triliance Petrochemical Co. Ltd. ("Triliance") is a Hong Kong-based broker with branches in Iran, the United Arab Emirates, China, and Germany that OFAC describes as "instrumental in brokering the sale of Iranian petrochemicals abroad." *Id.* ¶ 18. On January 23, 2020, OFAC designated Triliance for transferring funds on behalf of NIOC and placed Triliance on the List of Specially Designated Nationals and Blocked Persons. *Id.* ¶ 19. In its designation, OFAC found that Triliance was one of four companies collectively responsible for transferring hundreds of millions of dollars' worth of petroleum product exports on behalf of NIOC, which helped to directly finance the IRGC-QF "and its terrorist proxies." *Id.* On October 26, 2020, OFAC similarly designated NIOC pursuant to Executive Order 13,224, a counterterrorism authority, "for having materially assisted, sponsored, or provided financial, material, or technological support for, or goods or services in support of, the IRGC-QF." *Id.* ¶ 17.

The United States alleges in its verified complaint that, after it was designated, Triliance began using a network of front companies, including Petrochem South East Limited ("Petrochem"), Dynapex Energy Limited ("Dynapex"), Binrin Limited ("Binrin"), Sibshur Limited ("Sibshur"), Dinrin Limited ("Dinrin"), Donghai International Ship Management Limited ("Donghai"), and Xinghai International Ship Management Limited ("Xinghai") (collectively "potential claimant companies") in a scheme to facilitate the continued illegal purchase and transportation of Iranian petrochemical and petroleum exports, afford a source of influence over terrorist entities in Iran, and evade U.S. sanctions on Iran. *Id.* ¶¶ 1, 27, 30–32. According to the

4

Government, "[v]essels transporting the [Defendant Funds] utilized surreptitious means to hide the [Defendant Funds'] Iranian origin and to transfer the [Defendant Funds] onto other vessels moving the cargo into commerce by, and for the benefit of," the IRGC, NIOC, and other OFAC-designated entities. ECF 6-1 at 2. The Government now seeks forfeiture of Defendant Funds because they were exchanged in furtherance of this scheme. *Id.* at 3. To support its forfeiture claim, the Government posits the following factual allegations against each Defendant Fund.

*Defendant Funds 1 and 2*

The Government's verified complaint establishes that Defendant Funds 1 and 2 were transferred through a U.S. correspondent bank to potential claimant Dynapex on or around August 27, 2020. ECF 6-1 at 14; ECF 1 ¶¶ 33–34. Shipping records from around this time reflect that two of Dynapex's oil tankers traveled within Iran's exclusive economic zone with the ships' Automatic Identification System transceiver turned off, to avoid detection. ECF 6-1 at 15; ECF 1 ¶¶ 36–38. Subsequently, OFAC designated Dynapex on or about September 13, 2020, after OFAC learned that Triliance was using Dynapex to facilitate the shipment and resale of Iranian petrochemical products around the time of the fund transfers. ECF 6-1 at 14–15; ECF 1 ¶¶ 34–35. The complaint also establishes that Dynapex has a history of providing material assistance to Triliance in the shipment and resale of Iranian petroleum products. ECF 1 ¶ 38.

*Defendant Funds 3*

On or about August 24, 2020, potential claimant Binrin sent Defendant Funds 3 to Canadian Procurement Partner Pte. Ltd. through a U.S. correspondent bank. *Id.* ¶ 40. Subsequently, on October 29, 2020, OFAC designated Binrin as a front company used by Iranian entities connected with Triliance to facilitate the illicit sale and transport of Iranian oil in violation

of U.S. sanctions. *Id.* ¶ 24. In making that designation, OFAC found that Binrin was associated with these other front entities at the time of the funds transfer. ECF 6-1 at 15-16; ECF 1 ¶ 42.

*Defendant Funds 4 and 5*

On August 27, 2020, potential claimant Sibshur received Defendant Funds 4 from Quantum Materials Co., Ltd. through a U.S correspondent bank. ECF 6-1 at 16; ECF 1 ¶ 45. On August 31, 2020, Sibshur sent Defendant Funds 5 to Plus Power Co. Ltd. through a U.S. correspondent bank. ECF 6-1 at 16; ECF 1 ¶ 46. According to OFAC, Triliance has used Sibshur, among other companies, "to help settle, process, and transfer millions of dollars in proceeds from petrochemical product sales." ECF 1 ¶ 25. On October 29, 2020, OFAC designated Sibshur for its ongoing material support of Triliance. *Id.*

*Defendant Funds 6*

On October 1, 2020, potential claimant Dinrin sent Defendant Funds 6 to itself via a U.S. correspondent bank. *Id.* ¶ 50. The complaint alleges that Dinrin is a company that has been used by the Iranian company Zagros to obscure Zagros' involvement in petrochemical sales with Triliance. *Id.* ¶ 26. To this effect, on September 3, 2020 (prior to Dinrin wiring money to itself), OFAC designated Dinrin for its involvement with Zagros and, by extension, Triliance. *Id.*; ECF 6-1 at 16–17.

*Defendant Funds 7*

On March 27, 2020, potential claimant Xinghai sent Defendant Funds 7 to Petrochem through a U.S. correspondent bank. ECF 1 ¶ 54. The Government claims that Xinghai is a front company for Donghai, a ship management company responsible for freighting "tens of thousands of metric tons of petrochemicals worth millions of dollars" on behalf of Triliance. *Id.* ¶¶ 27, 31–32. Xinghai is a ship management company, and between September 2015 and October 2018,

Xinghai and Donghai made seven wire transfers for invoices, management fees, and port charges. *Id.* ¶ 31. The Government further alleges that Petrochem has received payments for Donghai, and that Triliance has used Petrochem to make payments to Donghai for the illicit shipment of Iranian petroleum products. *Id.* ¶ 55; ECF 6-1 at 17.

*Defendant Funds 8*

On September 4, 2020, Xinghai received Defendant Funds 8 from a wire transfer through a U.S. correspondent bank. ECF 1 ¶ 58. The Government alleges that this transfer was also in connection with Triliance's scheme to facilitate the sale of illicit Iranian petroleum products. ECF 6-1 at 17.

## II.   PROCEDURAL HISTORY

On February 27, 2024, the United States filed a verified complaint asserting a civil forfeiture action *in rem* against the Defendant Funds. ECF 1 ¶ 2. Two days later, the Court made a probable cause finding and issued a warrant for arrest *in rem* with regards to Defendant Funds. ECF 2. The same day, the Government identified multiple potential claimants to Defendant Funds and effectuated service on them via First-Class mail. ECF 6-1 at 8; ECF 4-1 at 2–4. On March 2, 2024, the Government commenced notification of this forfeiture online at forfeiture.gov, for thirty consecutive days. ECF 6-1 at 8; ECF 3-1 at 5. Verified claims in response to this notice were due no later than May 1, 2024. ECF 6-1 at 4. No claims based on publication or direct notice were filed. ECF 4-1 ¶ 7; ECF 6-1 at 8–10. On July 11, 2024, Plaintiff moved for default judgment. ECF 6.

## III.   LEGAL STANDARD

The Federal Rules of Civil Procedure authorize a district court to enter default judgment against a defendant who fails to defend its case. Fed. R. Civ. P. 55(b)(2). "Obtaining a default

judgment is a two-step process." *United States v. Twenty-Four Cryptocurrency Accounts*, 473 F. Supp. 3d 1, 4 (D.D.C. 2020); *see* Fed. R. Civ. P. 55(a)-(b). First, a plaintiff must request the Clerk of the Court to enter default against a party who "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Second, the plaintiff must move for default judgment. Fed. R. Civ. P. 55(b). Whether default judgment is appropriate is "committed to the sound discretion of [the trial court]."); *Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013) (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)). A defendant's failure to respond "do[es] not automatically entitle plaintiff to a default judgment." *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*, 368 F. Supp. 3d 10, 17 (D.D.C. 2019) (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 26 (D.D.C. 2008)). The complaint must still plead sufficient allegations which, when taken as true, state a claim for relief for the plaintiff to be entitled to default judgment. *Id.*

Here, the Government seeks default judgment in a civil forfeiture action *in rem*. Rule G(4) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") set forth the pleading requirements for such an action. First, Supplemental Rule G(1) requires that a forfeiture action *in rem* properly "aris[e] from a federal statute." Fed. R. Civ. P. Supp. R. G(1). Next, Supplemental Rule G(2) requires that a complaint must (a) be verified; (b) state the grounds for the court's jurisdiction; (c) describe the property with "reasonable particularity"; (d) identify where the property was seized, if it is tangible, or else "its location when the action is filed,"; (e) identify the statutory cause of action; and (f) "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2). Finally, before default judgment is issued for forfeiture *in rem*, "the government must show that it complied with the notice requirements contained in the

8

Supplemental Rules." *United States v. $1,071,251.44 of Funds Associated with Mingzheng Int'l Trading Ltd.*, 324 F. Supp. 3d 38, 46 (D.D.C. 2018); *see* Fed. R. Civ. P. Supp. R. G(4).

## IV.  ANALYSIS

The Court finds that default judgment is warranted. As discussed in greater detail below, (a) jurisdiction and venue are proper; (b) the Government complied with notice requirements; and (c) the verified complaint contains sufficient information to support a finding by the preponderance of the evidence that forfeiture of the Defendant Funds is appropriate under 18 U.S.C. § 981(a)(1)(G)(i).

### A.  The Court Has Jurisdiction and Venue Is Proper

Before addressing the merits, the Court must first establish that it possesses subject-matter jurisdiction, that venue is proper, and that it has *in rem* jurisdiction over the Defendant Funds. Under 28 U.S.C. § 1355(a), district courts "have original jurisdiction . . . of any action or proceeding for . . . forfeiture, pecuniary or otherwise, incurred under any Act of Congress." Further, under 28 U.S.C. § 1345, "the district courts shall have original jurisdiction of all civil actions, suits, or proceedings commenced by the United States." This being a civil forfeiture action initiated by the United States, the Court is satisfied that it has subject-matter jurisdiction.

Venue can be established under 28 U.S.C. § 1355(b)(1)(A), which provides that "[a] forfeiture action or proceeding may be brought in . . . the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred." The Government alleges that the Defendant Funds are subject to forfeiture because the potential claimants "failed to seek or obtain licenses from [OFAC], which is located in Washington, D.C., to conduct transactions through the United States for which licenses were required under United States law." ECF 1 ¶ 4. That allegation is sufficient to establish venue. *See $1,071,251.44 of Funds Associated with Mingzheng*

*Int'l Trading Ltd.*, 324 F. Supp. 3d at 46 (finding venue proper in this District under Section 1355 "because the interested parties failed to procure licenses from OFAC, which is located in Washington, DC.").

Finally, when coupled with the fact that Defendant Funds were transferred through U.S. banks, the potential claimant's failure to obtain licenses from OFAC establishes the Court's *in rem* jurisdiction over Defendant Funds—whether currently held within the United States or abroad. *See United States v. $599,930.00 of Funds Associated with Cooperating Co. 1*, No. 18-CV-2746, 2022 WL 1154731, at *7 (D.D.C. Apr. 19, 2022) (asserting *in rem* jurisdiction over funds held in U.S. banks); *see also United States v. All Funds In Acct. in Banco Espanol de Credito*, 295 F.3d 23, 27 (D.C. Cir. 2002) (recognizing that "Congress intended the District Court for the District of Columbia . . . to have jurisdiction to order the forfeiture of property located in foreign countries.").

### B. The Government Provided the Potential Claimants Adequate Notice

Before the Court enters default judgment, the Government must show that it complied with the notice requirements in the Supplemental Rules. Supplemental Rule G requires two forms of notice in a forfeiture action *in rem*: notice via publication as well as direct notice to potential claimants. *See* Fed. R. Civ. P. Supp. R. G(4)(a), (b). Here, the Government has satisfied its obligation as to both publication and direct notice.

First, the Government provided publication notice. Publication notice requires the Government to "describe the property, state the time to file a claim and answer, and name the government attorney to be served with the claim and answer." *Cryptocurrency Accounts*, 473 F. Supp. 3d at 5 (citing Fed. R. Civ. P. Supp. R. G(4)(a)(ii)). Such notice must be published "on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C). In this case, the Government published a notice of forfeiture online at

http://www.forfeiture.gov on March 2, 2024. ECF 3-1 at 3. The publication contained all the required information and was publicly available for thirty consecutive days. *Id.* at 3–5.

Second, the Government satisfied the direct notice requirement. Direct notice must be sent "to any person who reasonably appears to be a potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i). Actual notice is not required, but the government must send direct notice "by means reasonably calculated to reach the potential claimant." *Id.* Supp. R. G(4)(b)(iii)(A). When the government attempts to provide notice and "hear[s] nothing back indicating that anything ha[s] gone awry," then it is reasonable to assume that service was effective. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). On February 29, 2024, the government sent notice to nine potential claimants across 21 separate addresses via first class mail. ECF 6-1 at 8–10. One of the four addresses listed for potential claimant Xinghai had the mailing bounce, but none of the other addresses for any claimant had their mailings returned. *Id.* at 10. By ensuring that each identified potential claimant had at least one unreturned mailing, the government has satisfied its burden to provide direct notice of this action and met all the notice requirements.

### C. The Complaint Adequately Alleges that Default Judgment Is Appropriate

As described above, default judgment in a civil forfeiture action *in rem* requires the Government to fulfill two requirements. First, the Government must demonstrate that its forfeiture action adequately "aris[es] from a federal statute." Fed. R. Civ. P. Supp. R. G(1). Second, its complaint must satisfy the six elements set forth in Supplemental Rule G(2): "(a) be verified; (b) state the grounds for subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently

detailed facts to support a reasonable belief that the government will be able to meet its burden at trial." Rule G(1) effectively collapses into the sixth prong of (G)(2)'s requirement, so the Court addresses the Rules collectively below.

The first five (G)(2) elements are clearly met here: the complaint (1) is verified, ECF 1 at 22, (2) identifies the bases for jurisdiction, *id.* ¶¶ 3–4, (3) describes the property by identifying the specific amount of funds associated with each relevant party and stating where these funds were transferred, *id.* ¶¶ 33–61; (4) states, at least in general terms, where the funds are located, *id.*; ECF 6-1 at 2, and (5) identifies the statutory provisions under which forfeiture is sought, ECF 1 ¶¶ 62–72.

The final element is whether the Government has alleged sufficient facts in its complaint to "support a reasonable belief that the government will be able to meet its burden at trial." Fed. R. Civ. P. Supp. R. G(2)(f); *see Mingzheng Int'l Trading,* 324 F. Supp. 3d at 41 (interpreting this rule to require that the complaint "establish a reasonable belief that the government could prove by a preponderance of the evidence that [Defendant Funds are] subject to civil *in rem* forfeiture"). Supplemental Rule G(2) "does not articulate an onerous standard," but instead establishes a "low bar" that is appropriate at the default judgment stage "where a court should exercise 'greater flexibility' in judging factual allegations." *Id.* at 51–52 (quoting *United States v. Aguilar*, 782 F.3d 1101, 1108–09 (9th Cir. 2015)).

The complaint satisfies this low bar. The Government alleges that the Defendant Funds are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(i), which authorizes the forfeiture of assets that afford "any person a source of influence over" "any individual, entity, or organization engaged in planning or perpetrating any[] Federal crime of terrorism . . . against the United States, citizens or residents of the United States, or their property." The complaint provides sufficient

facts to establish a reasonable belief that the Government could prove, by a preponderance of the evidence, that the Defendant Funds are subject to forfeiture under § 981(a)(1)(G)(i).

First, the verified complaint sets forth sufficient allegations to establish that the IRGC and IRGC-QF are entities or organizations that "plan[] or perpetrat[e] acts of terrorism." *Id.* The Government alleges that, on April 15, 2019, the Secretary of State designated the IRGC, including the IRGC-QF, as a Foreign Terrorist Organization pursuant to Section 219 of the Immigration and Nationality Act. ECF 6-1 at 13; ECF 1 ¶ 15. To designate an entity as foreign terrorist organization, the Secretary is required to find, among other things, that "the organization engages in terrorist activity . . . or retains the capability and intent to engage in terrorist activity." 8 U.S.C. § 1189(a)(1)(B). The complaint also provides that OFAC designated the IRGC-QF under Executive Order 13,224, which is "aimed at freezing the assets of terrorists and their supporters." ECF 6-1 at 12; ECF 1 ¶ 15. For purposes of this case, the Court relies upon the Secretary of State and OFAC's findings that the IRGC and IRGC-QF are engaged in terrorist activity and therefore subject to 18 U.S.C. § 981(a)(1)(G)(i).

Second, the Government has shown that the Defendant Funds afforded the potential claimants a "source of influence" over the IRGC and IRGC-QF. 18 U.S.C. § 981(a)(1)(G)(i). Admittedly, case law is not well developed with regards to the "source of influence over" language of Section 981(a)(1)(G)(i). However, courts in this District have found persuasive the analysis found in RICO-based forfeitures, which also use the "source of influence over" language. *See, e.g.*, *United States v. All Petroleum-Product Cargo Aboard the Bella with Int'l Mar. Org. No. 9208124*, No. 20-CV-1791, 2021 WL 4502056, at *4 (D.D.C. Oct. 1, 2021); *United States v. Oil Tanker Bearing Int'l Mar. Org. No. 9116512*, 480 F. Supp. 3d 39, 46 (D.D.C. 2020); *United States v. 155 Virtual Currency Assets*, No. 20-CV-2228, 2021 WL 1340971, at *6 n.2 (D.D.C. Apr. 9, 2021). In

RICO-based forfeitures, courts consider whether property was "used to further the affairs of the enterprise" or "made the prohibited conduct less difficult." *All Petroleum-Product Cargo*, 2021 WL 4502056 at *4; *United States v. Neff*, 303 F. Supp. 3d 342, 349 (E.D. Pa. 2018).

      Here, the verified complaint alleges that the nine potential claimants operated within a complex network of front companies that support the IRGC's terrorist activities. *See* ECF 1 ¶¶ 1, 12, 38, 52, 55. It further alleges that these front companies, including potential claimants, engaged in a scheme to obfuscate the illicit sale and transportation of Iranian oil products. ECF 6-1 at 11, 17; ECF 1 ¶ 12. As participants in this scheme, the potential claimants were "essential in the illicit distribution of Iranian oil." ECF 1 ¶ 65. Indeed, because the IRGC has "long [been] a target of U.S. sanctions," it depends on a complex network of front companies to "attempt[] to circumvent sanctions." ECF 6-1 at 11. By acting within this network, the potential claimants "provide[d] financial lifelines to the IRGC," ECF 6-1 at 11–12, and generated revenues which support the IRGC's acts of terrorism, ECF 1 ¶¶ 14, 19. Further, by serving as front companies for Triliance after it was designated by OFAC, the potential claimants "provided a 'façade of legitimacy' that helped to conceal the alleged scheme to sell Iranian petroleum." *Oil Tanker*, 480 F. Supp. 3d at 46 (citing *United States v. Gjeli*, No. 13-CR-421, 2019 WL 8373425, at *7 (E.D. Pa. Nov. 25, 2019) (finding "façade of legitimacy" served as source of influence in RICO context)).

      The Defendant Funds were part and parcel of this scheme, being transferred through and by the potential claimants to facilitate the illicit trade of Iranian oil products. *See* ECF 1 ¶¶ 35–36, 42–43, 48, 51–52, 55–56, 60, 65, 71–72 (discussing the connection between each Defendant Fund and the illicit trade of Iranian oil). That many of the potential claimant companies were officially sanctioned by OFAC for their prohibited engagement with Triliance and other Iranian entities is further evidence that these Defendant Funds were being transferred within Triliance's scheme. *Id.*

¶¶ 21, 23–27, 35, 42, 51. Accordingly, the Government has furnished facts that support a reasonable belief that the potential claimants used the Defendant Funds to "further the affairs of the enterprise" and "make the IRGC's prohibited conduct less difficult," *Oil Tanker*, 480 F. Supp. 3d at 46, thereby affording the potential claimants a "source of influence" over the IRGC-QF within the meaning of 18 U.S.C. § 981(a)(1)(G)(i).

The Government has thus met its burden under Supplemental Rule G(2) and alleged facts sufficient to establish a reasonable belief that it would be able to prove its forfeiture claim by a preponderance of the evidence. As a result, both Supplemental Rules G(1) and G(2) are satisfied.

## V.  CONCLUSION

Because the verified complaint states a claim for forfeiture *in rem* pursuant to Supplemental Rules G(1) and G(2), the government has complied with the notice requirements of Supplemental Rule G(4), and no claimant has appeared in this action, the Government's motion for default judgment is **GRANTED.**

It is further **ORDERED**

1.   That default judgment is hereby entered against all persons or entities claiming an interest in the Defendant Funds;

2.   That the Defendant Funds shall be forfeited to the United States of America and no right, title, or interest in the following property shall exist in any other entity or person;

3.   Title to the Defendant Funds is vested solely in the United States;

4.   That the Defendant Funds shall be disposed of according to law; and

5.   That no additional action is required, and this matter is dismissed and stricken from the active docket.

A separate order accompanies this memorandum opinion.

**SO ORDERED.**

                                                    JIA M. COBB
                                                    United States District Judge

Date: November 21, 2024